## Commonwealth v. Patterson, etc.

*William A. Schnader*, Attorney General, and *John Y. Scott*, Deputy Attorney General, for Commonwealth.

*Hause, Gawthrop, Evans & Storey*, for defendant.

WICKERSHAM, J., September 11, 1934.—This is an appeal from the Department of Revenue determining a tax upon the appellant for liquid fuels used by him in his business as a contractor, principally engaged in the construction of highways. By stipulation, a trial by jury was dispensed with, and the case was submitted to the decision of the court to be heard and determined under the provisions of the Act of April 22, 1874, P. L. 109.

*Facts*

The facts in the case were stipulated, which stipulation we direct to be filed as a part of the record in this case.

It was further stipulated that the six appeals by the appellant, nos. 309-314, be consolidated and tried together.

Briefly, the facts, so far as they are relevant and necessary for our decision, may be restated as follows:

1. The appellant is a resident of Donora, Washington County, Pa., and was engaged in the general construction business, chiefly in the construction of public highways. He was at no time engaged in selling liquid fuels either at wholesale or retail, or in importing or causing to be imported liquid fuels into the Commonwealth for his own use. He had no permit under the provisions of the Act of May 1, 1929, P. L. 1037, to engage in business either as a "dealer" or "consumer" of liquid fuels in this Commonwealth, and none of the liquid fuels purchased by him was resold, but all were used or consumed by him in operating his motor vehicles in connection with his general construction business.

2. The Commonwealth claims a liquid fuels tax and penalties in the sum of $1,914.19, exclusive of interest.

3. For the months of July, August, September, October, and November 1930, the appellant purchased 58,538 gallons of liquid fuels.

4. During the months from July to November 1930, both inclusive, appellant purchased all the liquid fuels upon which the determinations described herein were based from Woodward Gas & Oil Company, a corporation of this Commonwealth, which was engaged in the sale of liquid fuels from a bulk service station in Donora, Pa., and which was, at the time, a dealer in liquid fuels, holding a permit as such issued by the Department of Revenue under the provisions of the Act of 1929.

5. The appellant did not know that Woodward Gas & Oil Company had not collected or paid over to the Commonwealth the tax upon said liquid fuels. Woodward Gas & Oil Company, however, did not pay said tax or any part of it to the Commonwealth, but filed with the Department of Revenue statements, in the form prescribed in section 11 of the Act of 1929, showing that all the liquid fuels referred to were sold to the appellant as a dealer for purposes of resale, and did not include any of said liquid fuels in its return of liquid fuels upon which it was liable for a tax. Said statements were filed with the Department of Revenue without the knowledge or consent of the appellant, and are not correct insofar as appellant is concerned.

6. In June 1930, appellant advised Woodward Gas & Oil Company that during the ensuing months he would need large quantities of liquid fuels to be consumed in his trucks and other motor vehicles which he used in the construction of public highways, and made arrangements to purchase this liquid fuels from said company in large quantities. Woodward Gas & Oil Company knew that all of said 58,538 gallons of liquid fuels sold to appellant were to be used by him and that none of it was sold to the appellant for the purpose of resale by him.

The question involved is: Under the provisions of the Act of May 1, 1929, P. L. 1037, is the appellant liable to the Commonwealth for the tax determined against him by the Department of Revenue?

*Discussion*

It is conceded by the Commonwealth that the appellant was not a "dealer", nor was he a "consumer", in the respect that he did not import or cause to be

imported liquid fuels into this Commonwealth. It is contended, however, that the appellant was a "consumer" in that he used liquid fuels within the Commonwealth upon which no tax had been collected by the "dealer", and upon which no tax had been paid.

We are in accord with the Commonwealth when it concedes that the appellant is neither a "consumer" nor a "dealer" in liquid fuels. No other conclusion could be supported by the definitions contained in the act. Section 1*b* of said act defines the word "dealer" to include "any person, firm, copartnership, association, or corporation, selling liquid fuels, as herein defined, to purchasers who purchase *for purposes other than resale.*" (Italics are ours.)

And paragraph (*c*) defines the word "consumer" to include "any person, firm . . . who or which imports, or causes to be imported, into this Commonwealth, liquid fuels, as defined in this act, for his or its own use, and also any person, firm . . . who or which uses liquid fuels in this Commonwealth *not purchased from dealers,* as defined in this act, and on which no tax was collected by a dealer under the provisions of this act" (Italics are ours).

We do not follow the contention of the Commonwealth, however, that while the appellant is not a "consumer" as defined by the act, yet he was a "consumer" in fact, and therefore should pay the tax.

The appellant did not know that the tax was not collected from him when he paid his bills; he did not know that the dealer made false returns to the Commonwealth. The dealer did know the purpose for which the liquid fuels were used by the appellant and that they were not purchased for resale, as provided by the act.

Following the contention and argument of the Commonwealth to its ultimate conclusion, it would follow that every motorist whose tank in his automobile is filled by a dealer in liquid fuels, and who pays the tax to the dealer, would be responsible to the Commonwealth for the tax on said liquid fuels if the dealer made a false return to the Commonwealth that the liquid fuel was sold to a purchaser for the purpose of resale; or, if the dealer failed to pay the tax, the motorist would be responsible to pay the tax again, although he would be in utter ignorance of the defalcation of the dealer. Certainly it cannot be contended that the legislature, in drafting this revenue act, had any such intention in contemplation. How could it ever have contemplated any such situation?

The Commonwealth concedes that there is a possible ambiguity between the definition of the word "consumer" contained in section 1 of the act and the use of that word in section 3, which imposes the tax, but contends that section 3 of the act is clear. This section provides, inter alia, as follows:

"Until the first day of July, one thousand nine hundred and thirty, a State tax of four cents a gallon, or fraction thereof, and thereafter a State tax of three cents a gallon, or fraction thereof, is hereby imposed and assessed upon all liquid fuels sold by dealers in this Commonwealth, *except for the purpose of resale,* and upon all liquid fuels used within this Commonwealth by consumers when no such tax has been collected thereon by a dealer. . . . Duplicate taxation is not intended, but the tax hereby imposed shall apply to all liquid fuels sold or used within this Commonwealth. . . . The taxes on sales hereby provided for shall be collected by the dealers selling liquid fuels to purchasers who purchase for purposes other than resale; and the taxes on use shall be paid by the consumers who use liquid fuels upon which the tax has not been paid; and said taxes shall be paid by such dealers and consumers into the State Treasury through the department in the manner and within the times herein specified. . . ." (Italics are ours.)

We do not follow the contention of the Commonwealth that "consumer" as defined by section 1 of the act means one thing, and "consumer" in section 3 refers to all purchasers of liquid fuels for the reasons above stated. We think the act draws a distinction between a purchaser of liquid fuels not for resale, and purchases by consumers, as defined in the act. Any other construction we think would lead to an absurdity. We think there is a clear distinction in the act between purchases of liquid fuels by consumers and purchases of liquid fuels not for resale, otherwise why would "consumer" be defined in the act to be any persons "who or which imports, or causes to be imported, into this Commonwealth, liquid fuels, as defined in this act, for his or its own use, and also any person . . . who or which uses liquid fuels in this Commonwealth not purchased from dealers".

Reference is also made to section 9 of the act, which provides:

"The tax imposed by this act shall be paid by the person, firm, . . . purchasing liquid fuels from dealers for his own use and not for the purpose of resale, or by the person, firm . . . using liquid fuels, upon which no tax has been collected by a dealer; and every person, firm, . . . required by this act to collect the tax herein specified, shall state the amount of such tax, separately from the price of the said liquid fuels, on all liquid fuel price display signs, sales or delivery slips, bills, statements, et cetera; . . ."

If the bills sent by the dealer to the appellant complied with section 9 of the act, then we think the appellant paid to the dealer the tax which is determined against him by the Department of Revenue. If the dealer, as conceded in the stipulation, made false returns to the Commonwealth, stating that he was selling this liquid fuel to the appellant for the purpose of resale, is it fair to assume that nothing was stated about the tax when bills were sent by the dealer to the appellant? If the bills for liquid fuels purchased had not contained, as required by section 9 of the act, a statement of the tax and price of the liquid fuels, it would have been an easy matter to have produced these statements in court; this was not done, but it was stipulated that the appellant knew nothing about it. Then why should he be required now to pay the tax, and thus be required to answer for the false and perjured return of the dealer? We cannot follow the contention of the Commonwealth in this respect.

By sections 3 and 9 of the act, it clearly appears that it is the duty of the dealer to collect the tax from those who purchase for purposes other than resale. There is no duty imposed on the purchaser to see that the tax collected by the dealer is paid over to the Commonwealth. There might be some force to the Commonwealth's contention if the appellant had been in a conspiracy with Woodward Gas & Oil Company to defraud the Commonwealth, but such is not the fact. Appellant thought he was paying the tax when he paid his bills monthly. There is no duty imposed upon him to see that Woodward Gas & Oil Company made a correct return of the tax to the Commonwealth; that duty is imposed solely upon Woodward Gas & Oil Company, the dealer, and the fiscal officers.

Under section 2 of the act, Woodward Gas & Oil Company was required to file a bond as a dealer, and this bond covered both the collection and the remission of the tax on these sales. The Commonwealth's remedy is against Woodward Gas & Oil Company, the dealer, and its surety. The mere fact that the said Woodward Company, the dealer, is bankrupt and the bond already exhausted does not give the Commonwealth any lawful power to proceed against a bona fide purchaser who purchased for purposes other than resale: Commonwealth v. Wilkes-Barre & Scranton Ry., 162 Pa. 614. Tax statutes

must be construed strictly against the Commonwealth, and taxes cannot be imposed by a liberal interpretation: Lowry's Estate, 314 Pa. 518.

We are of opinion, therefore, that the appellant, named the defendant in these proceedings, is not liable for the tax determined against him.

### Judgment

And now, September 11, 1934, judgment in the appeal filed to no. 309, Commonwealth docket, 1933, is directed to be entered in favor of the appellant, J. F. Patterson, trading as Donora Construction Company, and against the Commonwealth, unless exceptions be filed within the time allowed by law.